## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **VIRGINIA HOPPER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No.: 2:07-cv-457-MEF** |
| | ) | |
| **JACKIE GRAHAM, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS
### GRAHAM, ALABAMA STATE PERSONNEL BOARD,
### DICKSON, MCMILLAN, O'NEAL, MCNAIR AND ANDERSON

COME NOW Defendants Jackie Graham, individually and in her official capacity as Director of the State of Alabama Personnel Department; the Personnel Board of the State of Alabama, an agent of the State of Alabama; Joe N. Dickson, in his official capacity as chairman of the Personnel Board of the State of Alabama; and John McMillan, Joyce P. O'Neal, Ellen G. McNair and James H. Anderson, in their official capacity as members of the Personnel Board of the State of Alabama, and move this Honorable Court, pursuant to Rule 56 of the *Federal Rules of Civil Procedure*, to enter summary judgment in their favor as to all claims being asserted against them by Plaintiff Virginia Hopper on the grounds that there is no genuine issue of material fact and, therefore, said Defendants are entitled to judgment in their favor as a matter of law.

In support of their Summary Judgment Motion, said Defendants submit the following:

1.    The pleadings filed by the parties;

2.    The administrative record on appeal, which has been Bates labeled and consecutively numbered from 000001 to 001228 (References in Defendants' Brief to the Bates labeled documents will be indicated by the use of a "B" before the page number);

3.    The attached portions of Volume II of the Deposition of the Plaintiff taken on May 20, 2008;

4.    The attached Affidavit of Jackie B. Graham, the Director of the Alabama State Personnel Board;

5.    The attached Affidavit of Page B. Walley, the Commissioner of the Alabama Department of Human Resources;

6.    The attached Affidavit of Thomas King, the  Director of the Alabama Department of Human Resources Personnel Office;

7.    The attached State Personnel Board Minutes, March 14, 2007; and

8.    The Brief in Support of Defendants' Motion for Summary Judgment, which is filed simultaneously with this Motion.

Respectfully submitted,

s/ Joana S. Ellis
JOANA S. ELLIS    (ELL014)
ALICE ANN BYRNE        (BYR015)
Attorneys for Defendants Graham,
The Personnel Board of the State of
Alabama, Dickson, McMillan,
O'Neal, McNair, and Anderson

OF COUNSEL:

Alabama State Personnel Department
Legal Division
64 North Union Street
Folsom Administrative Bldg., Suite 316
Montgomery, Alabama 36130
Telephone:  (334) 353-0046
Facsimile:  (334) 353-4481
Email:       joana.ellis@personnel.alabama.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing document on the following by First Class U.S. mail, postage prepaid and properly addressed on this the 30th day of May 2008:

Joel C. Marsh, Esq.
Alabama Department of Human Resources
Post Office Box 30400
Montgomery, Alabama 36130
Email:       joel.marsh@dhr.alabama.gov

Jim L. DeBardelaben, Esq.
Attorney at Law
Post Office Box 152
Montgomery, Alabama 36101-0152
Email:       jimdebard@aol.com

s/ Joana S. Ellis
OF COUNSEL

COPY

1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION


VIRGINIA HOPPER,

      Plaintiff,

Vs.                        CIVIL ACTION NO.
                        2:07-CV-457-MEF

JACKIE GRAHAM, et al.,

      Defendants.


\* \* \* \* \* \* \* \* \* \* \* \*

VOLUME II

\* \* \* \* \* \* \* \* \* \* \* \*

**DEPOSITION OF VIRGINIA HOPPER**, taken pursuant

to stipulation and agreement before Pamela A. Wilbanks,

Certified Court Reporter, ACCR# 391, Registered

Professional Reporter and Commissioner for the State of

Alabama at Large, in the Law Offices of Jim

DeBardelaben, 1505 Madison Avenue, Montgomery, Alabama,

on Tuesday, May 20, 2008, commencing at approximately

9:00 a.m.

\* \* \* \* \* \* \* \* \* \* \* \* \*

133

1   Q.   The next one was affected by error of law, and

2         I'm not going to even ask you that one.

3            And then finally it says:  Unreasonable,

4         arbitrary, capricious, or abusive discretion.

5         Do you understand what those things mean?

6   A.   No, sir.

7   Q.   So you wouldn't be able to tell me any facts

8         that relate to those --

9   A.   No, sir.

10   Q.   -- if you don't understand the terms?

11           Count II and III really deal with State

12      Personnel and not Commissioner Walley.  The

13      fourth count was a count of conspiracy.  Tell me

14      what you know about any conversation that

15      Commissioner Walley had with anybody involved in

16      this case.  What do you know about conversations

17      he had with anybody else?

18   A.   I don't know.

19   Q.   Do you know of any conversations that he had

20         with anybody else --

21   A.   No, sir.

22   Q.   -- about the case?  I'm sorry?

23   A.   I do not know.

134

1    Q.   Do you know of any written communications that

2         Commissioner Walley had with anybody else about

3         this case?

4    A.   No.

5    Q.   Do you know if Commissioner Walley was involved

6         in any meetings with anybody concerning this

7         case?  I'm just asking what you know.

8    A.   No.

9    Q.   And that's a no.

10        Do you know if Commissioner Walley entered

11        into any agreements with anybody concerning this

12        case?

13   A.   No.

14   Q.   Do you know if Commissioner Walley talked to any

15        members of the State Personnel Board about the

16        case?

17   A.   I do not know.

18   Q.   Or had any written communication or other

19        communication with any members of the State

20        Personnel Board?

21   A.   I do not know.

22   Q.   And do you know if Commissioner Walley had any

23        communications of any nature with Ms. Jackie

1        Graham concerning this case?

2    A.    I do not know.

3                    MR. MARSH:  I think that's all I've

4                    got at this time.  I may have some

5                    follow-up questions after

6                    Ms. Ellis questions you.  But I

7                    think that's all I've got right

8                    now.  If I have any documents I

9                    didn't do, I'll come back to them.

10                   MR. DEBARDELABEN:  Let's take a quick

11                   break.

12                   MS. ELLIS:  Sure.

13                   (Brief recess.)

14                        **EXAMINATION**

15   BY MS. ELLIS:

16   Q.    Ms. Hopper, again, my name is Joana Ellis, and

17         I'm going to be asking you some questions.  Just

18         as Mr. Marsh told you, if I ask you something

19         you don't understand, just ask me to repeat it

20         or ask it a different way and I'll be glad to.

21         Is that okay?

22   A.    (Witness nods head positively.)

23   Q.    I'm going to do my best not to ask you the same

216

1          she knows about a conspiracy she

2          got from me, which his

3          attorney-client privilege, because

4          she doesn't know what conspiracy

5          is.

6          MS. ELLIS:  But she agreed she's still

7          contending there was a conspiracy.

8          MR. DEBARDELABEN:  If she knows what

9          it is.  But anything she knows

10         about a conspiracy came from me.

11         I mean, she can tell you the

12         facts, but she can't --

13         MS. ELLIS:  That's what I'm asking for

14         is facts.  What other

15         individuals --

16         MR. DEBARDELABEN:  But she can't

17         answer what a conspiracy is.

18         MS. ELLIS:  I'm not asking for

19         anything other than facts.

20   Q.    And the facts I'm asking for, name the other

21         people who are the various and sundry others who

22         are a part of what you contend to be this

23         conspiracy to harm you.

217

1   A.   I don't know the answer to that.

2   Q.   So sitting here today, you can't give me the

3        name of anybody else you claim is in this what

4        you claim to be a conspiracy?

5   A.   I don't understand how to answer you.

6   Q.   Well, you just give me the names.  For instance,

7        in your complaint you put that part of the

8        conspiracy was Defendant Graham, Defendant

9        Walley, the personnel director, and assistant

10       personnel director at DHR.

11            Do you understand you put that in your

12       complaint?  You named those people as part of

13       the conspiracy, correct?

14  A.   Yeah.  But you don't understand.  I don't

15       understand how to answer you to say --

16  Q.   All I'm asking you is give me some names of

17       anybody else who is a part of this conspiracy

18       that you're claiming.  And if you don't know

19       anybody else who is a part of the conspiracy,

20       that's fine.  I'm just asking you to name names

21       for me of anybody that you claim is part of the

22       conspiracy in addition to the four people that

23       you've already put it your complaint.

218

1   A.   Then can you tell me -- See, I may be thinking

2        one thing and you tell me what the conspiracy

3        entails.

4   Q.   You can just read that because it sets forth in

5        your complaint what the conspiracy entails, what

6        you're claiming it entails.

7                 MR. DEBARDELABEN:  I'm going to enter

8                 an objection.  That's legal

9                 terminology based on what she

10                communicated to a lawyer, and

11                there's no way possible for her to

12                answer that without having a legal

13                degree or legal knowledge.

14                MS. ELLIS:  Well, she put down she has

15                Business Law and Business Law I so

16                she was able to represent to the

17                State that she had two Business

18                Law courses.

19                MR. DEBARDELABEN:  And Business Law is

20                not tort law, and you know it, and

21                that is not a verified complaint.

22                She did not sign.

23  Q.   Can you name any other people that you claim are

219

1        in the conspiracy as you sit here today?

2   A.   No.

3   Q.   Now, do you have any reason to believe that

4        Ms. Jackie Graham has any -- had any reason to

5        have any ill will toward you?

6   A.   I don't know.

7   Q.   You don't know of any reason sitting here today

8        that Ms. Graham had any reason to have any ill

9        will toward you, correct?

10  A.   Correct.

11  Q.   Ms. Hopper, I'm showing you what has previously

12       been marked as Defendant's Exhibit 14.  And just

13       to shortcut things, this is the application that

14       you filled out for the Accountant position dated

15       11/21/03.  Would you agree with me that when you

16       put on here Trinity University -- where it says

17       the name and location of the school that you had

18       attended and you put Trinity University, 715

19       Stadium Drive, San Antonio, Texas 78212, that

20       that was false information?

21  A.   To say where I attended school, to say that was

22       false, yes.

23  Q.   You agree with me?

281

1    Q.    And when the receptionist would answer the

2          phone, what would the receptionist say?

3    A.    Trinity.

4    Q.    And what did the voice mail message for the

5          person that you usually talked to say?

6    A.    I can't recall.

7                    MS. ELLIS:  That's all I have right

8                    now.  I think Mr. Marsh has a few

9                    more questions.

10                   MR. MARSH:  I actually have a very few

11                   more questions.

12                        EXAMINATION

13   BY MR. MARSH:

14   Q.    I've just got a couple points of clarification I

15         need to go over with you, Ms. Hopper.

16            In showing you Defendant's Exhibit 3, which

17         is the transcript that you received from Trinity

18         College & University, and also Defendant's

19         Exhibit 13, which is -- that's not the right

20         one; I need 14 -- Defendant's Exhibit 14, which

21         is your application for Accountant which on page

22         3 you list the courses that you took, in looking

23         at both of those course listings, both in your

282

1    transcript on 3 and then the courses on your

2    application other than the ones that you took at

3    Troy University, for all of these courses that

4    you got credit from from Trinity College &

5    University, did you do any online coursework to

6    get credit for any of these courses?

7  A.   No, sir.

8  Q.   Did you ever read a book or any other material

9    that was assigned to you for credit for these

10    courses?

11 A.   No, sir.

12 Q.   Did you have to take any exam or test to get

13    credit for these courses?

14 A.   No, sir.

15 Q.   Did you ever prepare a paper, a project, any

16    other submission to them that you prepared to

17    get credit for the courses?

18 A.   No, sir.

19 Q.   The credit for these courses was solely based on

20    the information you provided about prior

21    education, training courses, and your work

22    experience; is that correct?

23              MR. DEBARDELABEN:  I'm going to object

289

1       that.

2   Q.  And you said that your side was not listened

3       to.  As you testified earlier, you had the

4       opportunity to present this in front of a

5       hearing at DHR, a hearing before the State

6       Personnel Board, and then a final argument

7       before the State Personnel Board.  You had an

8       opportunity all three times to explain your

9       side?

10              MR. DEBARDELABEN:  Object to the

11                 form.

12              MR. MARSH:  I'll do it one at a time.

13   Q.  You had an opportunity to explain your side of

14       the story to the DHR hearing officer; is that

15       correct?

16   A.  I know I had a hearing.

17   Q.  And did you have an opportunity to testify at

18       that hearing?

19   A.  Yes.

20   Q.  Was anything preventing you from testifying the

21       way you wanted to testify at that hearing?

22   A.  No.

23   Q.  And you had a hearing in front of Mr. Dan Morris

290

1          who was the hearing officer for the State

2          Personnel Board; is that accurate?

3    A.    Yes.

4    Q.    And you had an opportunity to testify and

5          present evidence at that hearing?

6    A.    Yes.

7    Q.    And finally your attorney had an opportunity to

8          argue your case before the full state board; is

9          that correct?

10   A.    Yes.

11   Q.    And have you seen a mental health professional

12         prior to losing your job with DHR?

13   A.    No.

14   Q.    At any time in your life?

15   A.    No, sir.

16   Q.    And when I say mental health professional, I'm

17         including psychologists, psychiatrists,

18         counselor, mental health nurse, anybody remotely

19         related to the mental health profession.  Is

20         that still your answer:  You have not seen

21         anybody?

22   A.    That's my answer.

23   Q.    Have you ever been diagnosed with any mental

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **VIRGINIA HOPPER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 2:07-cv-457-MEF** |
| ) | |
| **JACKIE GRAHAM, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**AFFIDAVIT OF JACKIE B. GRAHAM**
**IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

**STATE OF ALABAMA**          )
                             )
**COUNTY OF MONTGOMERY**      )

Before me, a Notary Public in and for said County and State, personally appeared Jackie B. Graham, who is known to me, and who after being first duly sworn, deposes and states as follows:

1.    My name is Jackie B. Graham.  I am the Director of the Alabama State Personnel Department ("SPD").  I am a resident of Montgomery County, Alabama, and am over the age of 19 years.  I have personal knowledge of the sworn statements contained in this Affidavit.  I am submitting this Affidavit in Support of Defendants' Motion for Summary Judgment in connection with the above-styled lawsuit.

2.    I was not Virginia Hopper's appointing authority and did not make, nor participate in the decision to terminate the employment of Plaintiff Virginia Hopper

Page 1 of 4

1   ("Ms. Hopper") as an Accountant with the Alabama Department of Human Resources

2   ("DHR").

3        3.     I did not appear at Ms. Hopper's pre-termination hearing before DHR's

4   Hearing Officer, Phillip Tyler. I have never met Phillip Tyler and had no contact with

5   him prior to, during, or subsequent to, Ms. Hopper's termination hearing at DHR.

6        4.     I did not participate in the preparation of the May 9, 2006, and June 12,

7   2006, letters by DHR Commissioner Walley to Ms. Hopper setting forth the charges

8   against her and notifying her of a pre-termination hearing date. I was not provided with

9   drafts or copies of those letters and did not see them prior to Ms. Hopper's termination.

10       5.     I received no notice of Ms. Hopper's pre-termination hearing at DHR nor

11   did I appear at the hearing or participate in the hearing in any way. The hearing did not

12   take place at the Office of the State Personnel Department.

13       6.     I did not participate in the preparation of Phillip Tyler's recommendation to

14   DHR Commissioner Walley to terminate the employment of Ms. Hopper.

15       7.     The dismissal appeal hearing before ALJ L. Daniel Morris, Jr. ("ALJ

16   Morris") took place on the premises of the Department of Transportation, not at the

17   Office of the State Personnel Department. I was not present during that hearing other

18   than to provide testimony when called as a witness by Ms. Hopper's attorney.

19       8.     ALJ Morris was not and has never been an employee of the Alabama State

20   Personnel Department.

9.    I did not communicate with ALJ Morris about the evidence concerning the validity of Ms. Hopper's degree or any other matter relating to Ms. Hopper prior to or during the dismissal appeal hearing at the Department of Transportation.

10.    I did not communicate with ALJ Morris about the evidence concerning the validity of Ms. Hopper's degree or any other matter relating to Ms. Hopper's dismissal prior to the issuance by ALJ Morris of his Recommended Order to the State Personnel Board ("SPB").

11.    I was not present during the oral arguments presented by counsel for Ms. Hopper and counsel for DHR before the State Personnel Board in connection with Ms. Hopper's dismissal appeal to the SPB.

12.    I did not sign the SPB's Order upholding Ms. Hopper's dismissal by DHR. Although my name is typed on the Order as Secretary to the SPB, the Order was signed by the Deputy Personnel Director, Paul Thomas.  I was not present when the Order was signed and was unaware of the decision of the SPB until after the Board had adjourned.

13.    I had no conversation with any members of the SPB about the evidence concerning the validity of Ms. Hopper's degree or any other matter concerning Ms. Hopper prior to the issuance by the SPB of its Order upholding the dismissal of her employment by DHR.

14.    I did not communicate with the Personnel Director of DHR (Thomas King), the Assistant Personnel Director of DHR (Vera Warren) or anyone else at DHR about the pre-termination hearing process or the termination appeal hearing process prior to or during  the times those hearings took place.

15.    I have never communicated in any way with DHR Commissioner Walley about any matter concerning Ms. Hopper.

FURTHER THE AFFIANT SAYETH NOT.

I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on this the 29 day of May, 2008.


JACKIE B. GRAHAM
Personnel Director
Alabama State Personnel Department

SWORN to and SUBSCRIBED before me on this the 29th day of May, 2008.

(SEAL)

Notary Public
My Commission Expires: 10.06.08

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| VIRGINIA HOPPER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. CV-03-S-1276-S |
| | ) | |
| JACKIE GRAHAM; THE | ) | |
| PERSONNEL BOARD OF THE | ) | |
| STATE OF ALABAMA; JOE | ) | |
| DICKSON; JOE MCMILLAN; | ) | |
| JOYCE O'NEAL; ELLEN | ) | |
| MCNAIR; JAMES ANDERSON; | ) | |
| PAGE WALLEY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| STATE OF ALABAMA | ) | |
| | ) | |
| COUNTY OF MONTGOMERY | ) | |

## AFFIDAVIT

Before me, the undersigned authority, personally appeared, PAGE B. WALLEY, who is known to me and who, having been first duly sworn, deposes and states as follows:

"My name is Page Walley. I am a resident of Lee County, Alabama, and am over the age of 19 years. I am competent to provide the sworn statements contained in this affidavit.

I am the Commissioner of the Alabama Department of Human Resources (DHR). I was appointed to this position on January 1, 2004.

As the Commissioner of the Alabama Department of Human Resources, I am responsible for all of the programs that DHR administers including child welfare, adult services, food stamps, financial assistance, and child support collections. I am also the Appointing Authority of

all of the employees who are assigned to the Department of Human Resources State Office. One of my duties as the Appointing Authority is to terminate the employment of DHR employees for misconduct, for not having the necessary qualifications for a position, and for other reasons as set forth in the Alabama law and the State Personnel Board Rules.

I have read the Complaint filed in this case by Ms. Virginia Hopper. Ms. Hopper started working in the Finance Office at the DHR State Office on April 16, 2006 as an Accountant (State Personnel classification 10611-Accountant.) Prior to this she was working as an Accountant at the State of Alabama Comptroller's Office. The Comptroller's Office is part of the State of Alabama Finance Department, which is a separate state agency, and is not part of DHR.

I was told by the DHR personnel office that they had been informed that there may be a problem with Ms. Hopper's degree that she used to qualify for her position as an Accountant with the State of Alabama. Based on this information, I signed a Charge Letter addressed to her dated May 9, 2006 and later signed an amended Charge Letter dated June 12, 2006. In these letters, I informed her that I had information that she may have falsified her application to be an Accountant with DHR and that it appeared that she did not qualify for the position of Accountant. I also informed her that a pre-termination hearing would be conducted by a hearing officer to hear evidence about these allegations and, if the allegations were proven to be true, that she could be terminated from her position with DHR.

The pre-termination hearing was held on June 22, 2006 before a hearing officer. I received the recommendation of the hearing officer sometime in August 2006. The hearing officer concluded that Ms. Hopper did falsify her application for the Accountant position and further that she did not have a valid degree necessary to be an Accountant with DHR. On August 14, 2006, I signed a letter to Ms. Hopper informing her that her employment with DHR

2

was being terminated. I also informed her in the letter that she had ten days to request a hearing before the State Personnel Board.

I did not speak to the State Personnel Director, Ms. Jackie Graham, write to Ms. Graham, or communicate with Ms. Graham in any manner about Ms. Hopper, the evidence concerning Ms. Hopper's degree, or about any other matter involving Ms. Hopper, either before or after the DHR pre-termination hearing of Ms. Hopper. I did not communicate with anyone else at the State Personnel Department or with any members of the State Personnel Board concerning Ms. Hopper or her employment and dismissal. The only communication that I had with anyone concerning Ms. Hopper, or her case, was with members of my DHR personnel office and with members of my DHR legal office. I made no decision on Ms. Hopper's dismissal until I read the report from my hearing officer after the pre-termination hearing was completed.

Ms. Hopper's pre-termination hearing was fair and provided her with due process. She attended the DHR hearing, was represented by counsel at the hearing, presented evidence, questioned witnesses, and testified to the hearing officer. This hearing was conducted in accordance with the rules of the State Personnel Board and the guidelines in the DHR Personnel Policy and Procedures Manual. The hearing officer insured that Ms. Hopper had an ample opportunity to present her side of the story before I made any decision about her termination.

I did not deprive Ms. Hopper of her constitutional rights of due process or equal protection. I did not act in excess of my authority or the authority of DHR in directing that a pre-termination hearing be held concerning the charges in her charge letter or in my dismissal of Ms. Hopper. I have not acted in violation of any agency rules. I did not terminate Ms. Hopper based on any unlawful procedure. There were no errors of law in the processing of Ms. Hopper's case or in her dismissal. The decision to terminate her was based on reliable, probative and

substantial evidence. I was not involved in any abuse of discretion or an unwarranted exercise of discretion and the decision to terminate Ms. Hopper was not unreasonable, arbitrary or capricious. On the contrary, the evidence showing that Ms. Hopper falsified her Accountant application and that she did not have a valid Accounting Degree was overwhelming.

I did not have any agreement with, or enter into any conspiracy with, the State Personnel Director Ms. Jackie Graham, the DHR Personnel Director, the DHR Assistant Personnel Director, or anyone else, to deny Ms. Hopper a fair and unbiased hearing, her due process, or her equal protection under the law. As the appointing authority, I made the decision to terminate her employment.

I did not base my decision to terminate Ms. Hopper's employment with DHR on the investigation of her degree conducted by the State Personnel Department or on any information provided by the State Comptroller's Office. My decision to terminate Ms. Hopper's employment was based on the evidence established at the DHR pre-dismissal hearing and the recommendation of the hearing officer. This evidence included Ms. Hopper's own testimony that the document she calls a degree was given to her by Trinity College and University (a diploma mill in the Virgin Islands that she found on the Internet.) She did not take any on-line courses. The document that she calls a diploma was given to her based on their review of the four courses that she took at Troy University, two courses taken at Wetumpka Vocational College, four two-day work related seminars, and her work experience. The hearing officer concluded, and I concurred, that Ms. Hopper intentionally falsified her Accountant application and that Ms. Hopper does not have a valid college degree, which is a requirement to be an Accountant. I know that there was an argument made at the pre-termination hearing by Ms. Hopper that the State of Alabama Personnel Office did not require that a degree of an applicant

4

come from an "accredited" college or university. However, the issue of whether Trinity College and University was accredited was not a factor in my decision to terminate Ms. Hopper. My decision was based on the facts that she did not have a valid degree from any university or college. What she had from Trinity College and University was not a valid degree, but rather a piece of paper given to her based on the few courses that she had taken and her work experience.

It is one of my duties as the Commissioner of DHR and as the Appointing Authority for DHR, to decide whether employees should be dismissed when evidence of misconduct or evidence that they don't qualify for their position is presented and proven in a pre-termination hearing. I used my discretion and judgment and made the decision to terminate the employment of Ms. Hopper.

I was not involved in any decisions regarding Ms. Hopper's post-termination hearing before the State Personnel Board. My only involvement in the post-termination hearing was being called by Ms. Hopper's attorney as a witness in the hearing.

I have acted in the line and scope of my duties in all of the actions that I have taken regarding Ms. Hopper and the termination of her employment with DHR. None of the actions that I have taken were done in any personal capacity."

Page B. Walley, Ph.D.
Commissioner,
**Alabama Department of Human Resources**
Sworn to and subscribed
before me on this the _28th_
day of _May_, 2008.

Notary Public, State at Large

My Commission Expires: _4/30/2011_

5

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| VIRGINIA HOPPER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-cv-457-MEF |
| | ) | |
| JACKIE GRAHAM; THE | ) | |
| PERSONNEL BOARD OF THE | ) | |
| STATE OF ALABAMA; JOE | ) | |
| DICKSON; JOE MCMILLAN; | ) | |
| JOYCE O'NEAL; ELLEN | ) | |
| MCNAIR; JAMES ANDERSON; | ) | |
| PAGE WALLEY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| STATE OF ALABAMA | ) | |
| | ) | |
| COUNTY OF MONTGOMERY | ) | |

## AFFIDAVIT

Before me, the undersigned authority, personally appeared, Thomas King, who is known to me and who, having been first duly sworn, deposes and states as follows:

"My name is Thomas King. I am a resident of Montgomery County, Alabama, and am over the age of 19 years. I am competent to provide the sworn statements contained in this affidavit.

I am the Director of the Alabama Department of Human Resources (DHR) Personnel Office. I was appointed to this position in December 2000.

In late April or early May of 2006, I was informed by the State of Alabama Personnel Department that Ms. Virginia Hopper, an Accountant in the DHR Finance Office, had an

1

Accountant degree that may not be valid. On May 4, 2006, I met with Ms. Jackie Graham and

other staff from the State Personnel Department. DHR Commissioner Walley did not attend this

meeting. I was provided a copy of an investigation report that staff from the State Personnel

Department had prepared concerning an investigation of Ms. Hopper's college degree. It

appeared from this information that Ms. Hopper's degree was not valid. I made no decision that

day concerning Ms. Hopper's employment and I had no agreement with Ms. Graham or anyone

else concerning what should be done with this information.

There was no discussion in this meeting about denying Ms. Hopper any of her due

process rights or equal protection rights. DHR works very hard to insure that all employees are

treated fairly and provided with appropriate due process before any disciplinary action is taken

against them. Before we make a decision to terminate any merit employee, that employee is

given a full hearing before an independent hearing officer that is not associated with his or her

case in any way. In fact, I have been told that DHR provides more due process to its employees

facing termination than do most other state agencies.

After the May 4, 2006 meeting, I met with DHR Commissioner Walley to discuss the

case. He is the appointing authority for all DHR State Office employees, including Ms. Hopper.

As appointing authority, he makes the final decision on the hiring and dismissal of all DHR State

Office employees. He decided to give Ms. Hopper a Charge Letter and to schedule a pre-

termination hearing before a hearing officer. Commissioner Walley made no decision at that

time concerning the ultimate outcome of the case.

Prior to giving Ms. Hopper a Charge Letter, I called her into my office along with her

supervisor and told her what we suspected about her degree. She offered no explanation. I told

her that we planned to give her a Charge Letter, but for her to go home and think about things

2

that evening. I asked her to come back to see me the next day and to tell me anything that she wanted me to know about this issue before she received her Charge Letter. I also informed her that she had the option to resign before the Charge Letter was served if she wanted to do so. Ms Hopper returned to see me the next day, but she offered no information about her degree. She was served the Charge Letter that day.

The pre-termination hearing for Ms. Hopper was held on June 22, 2006. The hearing officer concluded that Ms. Hopper had falsified her application to be an Accountant with the State of Alabama and that she did not have a valid degree necessary to be an Accountant. Based on the evidence and recommendation of the hearing officer, Commissioner Walley decided to terminate Ms. Hopper's employment with DHR.

Though Commissioner Walley and I discussed Ms. Hopper's case both before and after the pre-termination hearing, we had no agreement concerning her employment with DHR. The decision to terminate Ms. Hopper's employment was his alone. We never discussed denying her any of her constitutional rights, including her right to due process or her right to equal protection. On the contrary, we insured that she had a fair hearing before an unbiased hearing officer. I have had no discussions or agreements with anyone at DHR or outside of DHR concerning denying Ms. Hopper of any of her constitutional rights. I was not involved in the post-termination hearing that Ms. Hopper had before the State Personnel Board ALJ other than being called as a witness by Ms. Hopper's attorney."

**Thomas King**
**Director**
**Alabama Department of Human Resources**
**Personnel Office**

3

Sworn to and subscribed
before me on this the ___30th___
day of ___May___ ___, 2008.

_____
Notary Public, State at Large

My Commission Expires: ___4/30/2011___

EIGHT HUNDRED AND FORTY-EIGHTH
MEETING
OF THE
STATE PERSONNEL BOARD

March 14, 2007

The State Personnel Board met in regular session in the office of the State Personnel
Department at 10:15 a.m. on March 14, 2007.

Members Present
Mr. Joe Dickson, Chairman
Mr. James H. Anderson, Member
Mr. John McMillan, Member
Ms. Ellen G. McNair, Member
Ms. Joyce P. O'Neal, Member

Others Present
Jackie Graham, Personnel Director
Paul D. Thomas, Deputy Director
Alice Ann Byrne, Legal Counsel
Sandra Speakman, Assistant Attorney General

I.    Board Chairman Joe Dickson opened the meeting.

II.   On motion of Ellen McNair, seconded by James H. Anderson, the minutes of the
      February meeting were approved.

III.  CLASSIFICATION AND PAY ISSUES

      A.    At the request of the Alcoholic Beverage Control Board, the Board changed the
            title of the following classifications:

            | Class Code | Current Title | Approved Title |
            |---|---|---|
            | 60331 | ABC Enforcement Agent I | ABC Enforcement Agent |
            | 60334 | ABC Enforcement Agent II | ABC Enforcement Sergeant |
            | 60335 | ABC Enforcement District Supervisor | ABC Enforcement Lieutenant |
            | 60338 | ABC Enforcement Assistant Director | ABC Enforcement Captain |
            | 60340 | ABC Enforcement Director | ABC Enforcement Chief |

            Motion made by Ellen McNair, seconded by Joyce P. O'Neal.

      B.    At the request of the Department of Corrections, the Board changed the title of
            Search Party Assistant Dog Handler, class code 60620, to Corrections Canine
            Assistant Handler.

March 14, 2007
Page 2

The Board established the classification of Corrections Canine Handler, class code 60621 at range 70 ($30,888.00 - $46,788.00).

The Board changed the title of Search Party Dog Handler, class code 60622, to Corrections Canine Handler Supervisor.

Motion made by Ellen McNair, seconded by Joyce P. O'Neal.

C.  At the request of the Department of Human Resources, the Board increased the salary of Administrative Analyst III, class code 11923, from range 82 ($55,560.00 - $84,693.60) to range 84 ($64,502.40 - $98,395.20).  Motion made by Joyce P. O'Neal, seconded by John McMillan.

IV.  SPECIAL PAY ISSUES

A.  At the request of the Department of Forensic Sciences, the Board approved a salary of $129,108.00 (to be paid at the semi-monthly arrears rate of $5,379.50) for Michael F. Sparks, who has been appointed to serve as Director.  Also, the Board allocated this position to range 91 ($108,547.20 - $165,480.00).  Motion made by John McMillan, seconded by Ellen McNair.

B.  At the request of the Alabama Medicaid Agency, the Board approved a salary of $43,514.40 (to be paid at the semi-monthly arrears rate of $1,813.10) for Mattie Jackson who is being appointed as an Executive Assistant III, class code 99003.  Motion made by Joyce P. O'Neal, seconded by John McMillan.

V.  ISSUES CONCERNING OVERTIME PAYMENTS

A.  At the request of the Department of Corrections, the Board authorized the liquidation of accumulated compensatory time for one FLSA non-exempt employee in the classification of Personnel Assistant II, class code 10831, who has been required to work overtime in order to meet payroll deadlines as other section employees are involved in changes to the Department's payroll system. Liquidation of this overtime will total $2,116.82.  It is also requested that authorization be granted to pay overtime to this employee as needed to meet payroll deadlines.  Overtime will involve approximately 330 hours for the period from February 16, 2007 to September 30, 2007 at a cost not to exceed $7,718.70.  Motion made by John McMillan, seconded by Joyce P. O'Neal.

March 14, 2007
Page 3

B.   At the request of the Department of Public Safety, the Board authorized a one-year extension of authorization to pay overtime to approximately 386 FLSA non-exempt employees who may be required to work overtime in situations where compensatory time is not practical. Extra hours worked will be in connection with emergency situations including natural disasters, riots, strikes, major airline crashes or federal grant projects. Non-exempt employees also work additional hours as needed in order to carry out departmental activities such as unscheduled significant special events, reduce backlog of fingerprint cards and background checks, service driver license testing sites, assist officers with fraud cases, provide emergency road service, and perform traffic control duties. Classes involved in this overtime are listed below.

| Classification | Class Code |
| --- | --- |
| Clerk Stenographer II | 10142 |
| Clerk Stenographer III | 10143 |
| Administrative Support Assistant I | 10196 |
| Administrative Support Assistant II | 10197 |
| Administrative Support Assistant III | 10198 |
| Graphic Arts Technician | 10312 |
| Data Entry Operator | 10410 |
| IT Systems Technician | 10525 |
| Account Clerk | 10601 |
| Accounting Technician | 10605 |
| Stock Clerk II | 10912 |
| Warehouse Worker | 10920 |
| Departmental Operations Specialist | 11978 |
| Photography Technician I | 20205 |
| Photography Technician II | 20206 |
| Police Communications Officer I | 21121 |
| Police Communications Officer II | 21122 |
| Police Communications Officer III | 21123 |
| Communications Technician II | 21156 |
| Investigative Technician I | 60347 |
| Investigative Technician II | 60349 |
| Criminal Intelligence Analyst | 60351 |
| Forensic Technology Examiner | 60356 |
| Driver License Examiner I | 60410 |
| Driver License Examiner II | 60411 |
| Driver License Specialist | 60412 |
| Driver License Supervisor | 60413 |
| Fingerprint Classifier I | 60501 |
| Fingerprint Classifier II | 60502 |
| Latent Print Examiner | 60503 |
| Latent Print Examiner Trainee | 60504 |
| Custodial Worker | 80101 |
| Building Custodian I | 80111 |
| Equipment Operator I | 90311 |

March 14, 2007
Page 4

| | |
|---|---|
| Equipment Operator II | 90312 |
| Aircraft Mechanic | 90422 |
| Service Patrol Operator | 90428 |
| Service Patrol Operator Supervisor | 90429 |
| Equipment Mechanic | 90445 |

Overtime will involve approximately 13,704 hours for the period March 2007 to February 2008 at a cost not to exceed $449,173.50. Motion made by Joyce P. O'Neal, seconded by Ellen McNair.

VI.   SPECIAL MERIT RAISES

A.   At the request of the Department of Agriculture and Industries, the Board granted a 2-step special merit raise to Teresa Brunson, Personnel Assistant III, class code 10832. Motion made by James H. Anderson, seconded by John McMillan.

B.   At the request of the Department of Education, the Board granted a 2-step special merit raise to Patricia McSpadden, Education Administrator, class code 30123. Motion made by Joyce P. O'Neal, seconded by John McMillan.

C.   At the request of the Department of Transportation, the Board granted a 2-step special merit raise to Tony Harris, Governmental Relations Manager, class code 11989. Motion made by Joyce P. O'Neal, seconded by John McMillan.

VII.   CONTRACTS

Public Health

1.   The Board approved a contract with Frances Barnwell, R.N., to perform nursing services under the direction of the Tuberculosis Control Program Manager in accordance with departmental policies and procedures. This contract covers the period March 16, 2007 through March 15, 2008, at a rate of $20.00 per hour not to exceed $41,600.00 plus expenses not to exceed $4,900.00. The total amount of the contract will not exceed $46,500.00.

2.   The Board approved a contract with Victoria Garcia to provide interpreter services to Hispanic clientele on visits to Marshall County Health Department. This contract covers the period March 14, 2007 through February 28, 2008, at a rate of $10.00 per hour not to exceed $20,800.00.

March 14, 2007
Page 5

    3.    The Board approved the renewal of a contract with Amy Minish to serve as a nutritionist for the purpose of assisting the Department in carrying out its clinic services programs. This contract covers the period March 16, 2007 through March 15, 2008, at a rate of $20.00 per hour not to exceed $20,000.00 plus expenses not to exceed $5,000.00. The total amount of the contract will not exceed $25,000.00.

Motion made by Joyce P. O'Neal, seconded by Ellen McNair.

VIII.   SPECIAL ISSUE

Ramon E. Alonzo has made application to be reinstated to his former merit system position with the Department of Examiners of Public Accounts following his release from an indefinite leave of absence request for service in the armed forces of the United States. The Board granted the request to record this application for reinstatement in accordance with Code of Alabama (1975) Section 36-26-32. Motion made by Joyce P. O'Neal, seconded by John McMillan.

The Board members expressed their gratitude for his honorable service in the military for our country.

IX.   At the beginning of oral arguments, Paul D. Thomas, Deputy Personnel Director, presided. Jackie Graham was absent for the legal issues and for the executive session of the meeting.

X.   ORAL ARGUMENTS

The Board heard oral arguments in the dismissal appeal of Willie Pollard from the Department of Youth Services, Virginia Hopper from the Department of Human Resources, and Kemmie Walker from the Department of Youth Services.

XI.   EXECUTIVE SESSION MOTION

Ellen McNair moved that the State Personnel Board go into Executive Session to consider the discipline or dismissal of a public employee and to deliberate and discuss evidence or testimony presented during a public or contested case hearing, and to discuss the general reputation and character of that individual, in accordance with Sections VII (1), (2) & (9) of the Open Meetings Act. Joyce P. O'Neal seconded the motion. Ellen McNair, Joyce P. O'Neal, John McMillan, James H. Anderson and Joe Dickson voted in favor of the motion.

Before convening to Executive Session, Chairman Joe Dickson announced the Board would reconvene in open session in approximately fifteen minutes.

March 14, 2007
Page 6


XII.   BOARD ORDERS

The following action was taken on pending cases:

1.      Willie Pollard, Department of Youth Services:  Reinstate in probation status
        without back pay, and required to attend training.  Motion made by
        James Anderson, seconded by Joyce P. O'Neal.

2.      Virginia Hopper, Department of Human Resources:  Dismissal upheld.  Motion
        made by Joyce P. O'Neal, seconded by John McMillan.

3.      Kemmie Walker, Department of Youth Services:  Dismissal upheld.  Motion
        made by Ellen McNair, seconded by Joyce P. O'Neal.

4.      Tekilua Thomas, Department of Mental Health:  Dismissal upheld.  Motion
        made by Joyce P. O'Neal, seconded by Ellen McNair.

5.      Vertice Allen Powell, Department of Human Resources:  Dismissal upheld.
        Motion made by Joyce P. O'Neal, seconded by Ellen McNair.

6.      Anthony Hatcher, Department of Corrections:  Board approved settlement
        agreement regarding USERRA.  Motion made by Ellen McNair, seconded by
        Joyce P. O'Neal.

Chairman Joe Dickson announced that the next scheduled meeting of the State Personnel
Board is April 18, 2007.

There being no further business, at 12:12 p.m. the meeting was adjourned on motion of
Ellen McNair, seconded by John McMillan.


Secretary                                              Joe Dickson, Chairman


                                                       James H. Anderson, Member

March 14, 2007
Page 7

_____
John McMillan, Member

_____
Ellen G. McNair, Member

_____
Joyce P. O'Neal, Member