IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| VIRGINIA HOPPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:07-cv-457-MEF |
| | ) | |
| JACKIE GRAHAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON BEHALF OF DEFENDANTS GRAHAM, ALABAMA STATE
PERSONNEL BOARD, DICKSON, MCMILLAN, O'NEAL,
MCNAIR AND ANDERSON

COME NOW Defendants Jackie Graham, individually and in her official capacity as Director of the State of Alabama Personnel Department; the Personnel Board of the State of Alabama, an agency of the State of Alabama; Joe N. Dickson, in his official capacity as chairman of the Personnel Board of the State of Alabama; John M. McMillan, Joyce P. O'Neal, Ellen G. McNair, and James H. Anderson, in their official capacity as members of the Personnel Board of the State of Alabama, and submit this Brief in Support of their Motion for Summary Judgment as to all claims being asserted against them by the Plaintiff in this cause.

On April 13, 2007, Plaintiff Virginia Hopper (hereinafter "Ms. Hopper" or "the Plaintiff") filed a Complaint in the Circuit Court of Montgomery County, Alabama, against Jackie Graham, individually and in her official capacity as Director of the Alabama State Personnel Department, the Personnel Board of the State of Alabama, the

five members of the Personnel Board in their official capacity as members of the Board, and Page B. Walley, individually and in his official capacity as Commissioner of the Alabama Department of Human Resources (hereinafter "DHR"). The Complaint was timely removed by all Defendants to this Court on May 22, 2007. Ms. Hopper's claims stem from the termination of her employment as an Accountant with DHR.

## SUMMARY OF THE ALLEGATIONS
## IN PLAINTIFF'S COMPLAINT

Plaintiff was terminated from DHR for *inter alia,* falsely claiming she had a B.S. degree in Business Administration from Trinity University in San Antonio, Texas. In fact, Plaintiff never attended a class, took an exam or wrote a paper, she simply paid $695.00 for a piece of paper purporting to be a "diploma" from Trinity College & University – a diploma mill.

In her Complaint, Ms. Hopper sets forth four counts: Count I is entitled "Petition for Review" and is filed pursuant to Ms. Hopper's right to appeal the ruling of the Alabama State Personnel Board (hereinafter "the SPB" or "the Board") pursuant to the Alabama Administrative Procedure Act, § 41-22-1, *et seq.* of the *Alabama Code*. Specifically, section 41-22-20 of the *Alabama Code* sets forth the procedure and standard of review for the judicial review of a State agency's action, such as the termination of a State employee. Count I pertains only to the SPB.

In Count II, Ms. Hopper asserts state and federal denial of due process and equal protection claims based upon her contention she was denied a full and fair hearing because the ALJ denied her motion to require a third party to produce documents of other

investigations concerning false information on State applications.  Count II appears to pertain to all Defendants.

In Count III, Ms. Hopper asserts that Defendant Jackie Graham, the State Personnel Director, violated Ms. Hopper's due process and equal protection rights under state and federal law and "prevented the Plaintiff from receiving a full an [sic] fair hearing and said action of Defendant Graham tainted the Personnel Hearing and Personnel Board appeal of the Plaintiff."  (Plaintiff's Complaint ¶ 46).  Count II pertains only to Defendant Graham.

In Count IV, Ms. Hopper contends that Defendants Graham and Walley, and "various and sundry others including but not limited to the Personnel Director and Assistant Personnel Director" at DHR conspired to deny her a fair and unbiased hearing and to deny her due process and equal protection as guaranteed by state and federal law. The Plaintiff further contends that the Defendants "and various and sundry other individuals" were acting under the color of state law and/or beyond the authority of positions the Defendants "and/or others" held.  (Plaintiff's Complaint ¶ 48).  The Plaintiff seeks compensatory and punitive damages as well as attorney fees and court costs.  Count IV pertains only to Defendants Graham and Walley.

## SUMMARY OF THE GROUNDS ENTITLING DEFENDANTS TO SUMMARY JUDGMENT

Summary judgment is due to be granted in favor of the SPB as to Count I on the grounds that section 41-22-20(k) of the *Alabama Code* requires that an agency order be taken as "*prima facie* just and reasonable" and precludes a court from substituting its

judgment for that of the agency as to the weight of the evidence on questions of fact.  In addition, as will be discussed in more detail, section 41-22-20(k) only permits a court to reverse or modify a decision of an agency if the court finds that substantial rights of the petitioner (the Plaintiff in this case) have been prejudiced by certain agency actions enumerated in section 41-22-20(k).  The Plaintiff has failed to present sufficient evidence of any such violations.

As to Count II, summary judgment is due to be granted based upon the Eleventh Amendment absolute immunity to which the SPB and Defendant Graham in her official capacity are entitled.   Additionally, the State Personnel Board members are entitled to absolute quasi-judicial immunity.

As to Counts II and III, summary judgment is due to be granted in favor of Defendant Graham based upon her entitlement to both absolute and qualified immunity as well as Plaintiff's failure to present substantial evidence to support her claims against Defendant Graham.

As to Count IV, summary judgment is due to be granted on the grounds that the Plaintiff has failed to present substantial evidence to satisfy the elements of a conspiracy cause of action.

## STATEMENT OF THE CASE AND FACTS

Plaintiff was hired by the Department of Finance in February of 2002 as an Accounting Technician and was assigned to the State Comptroller's Office.  (B. 741, Brackin testimony, p. 78, lines 16-22).  On November 21, 2003, Plaintiff submitted an

application to the State Personnel Department for the Accountant classification with the State of Alabama. (B. 453-459). The qualifications for the Accountant classification as of November 12, 2003, required a Bachelor's degree with a major in Accounting or Business Administration, including completion of five (5) college level accounting courses (four of which must be Principles I and II and Intermediate I and II or equivalent courses). (B. 186).

Plaintiff's supervisor at the Comptroller's Office was Jeanne Brackin (hereinafter "Brackin"). In December 2003, Brackin became suspicious of Plaintiff's claim that she had a degree. (B. 741, Brackin testimony, p. 79, lines 9-21). When Plaintiff came to work at the Comptroller's Office in February of 2002, she stated that she did not have a degree and in late 2003, Plaintiff informed Brackin that she had a degree and that she had taken the Accountant's examination. (B. 741, Brackin testimony, p. 79, lines 15-21). Plaintiff stated that she had received credit for some of her life experiences and that her degree was from Trinity University in San Antonio, Texas (B. 742, Brackin testimony, p. 82, lines 4-23, p. 83, line 1). Upon researching, Brackin determined that Trinity University in San Antonio, Texas was a legitimate university and did not pursue the issue. (B. 742, Brackin testimony, p. 84, lines 5-15). After Plaintiff's promotion to Accountant, however, Brackin began noticing Plaintiff struggling with issues that someone with her claimed degree should be able to grasp faster. (B. 742-743, Brackin testimony, pp. 84-85, lines 21-23, 1-6). After receiving permission from her supervisor, Brackin reviewed a copy of Plaintiff's application for Accountant wherein she claimed to

have graduated in May of 2002 from Trinity University. (B. 742, Brackin testimony, p.

85, lines 16-22). Recognizing the inconsistencies, Brackin received permission from her

supervisor to verify Plaintiff's degree. (B. 743, Brackin testimony, pp. 86-87, lines 23, 1-

2). After contacting Trinity University in San Antonio, Texas, it was learned that Trinity

University had no record of a Virginia Swearengin Hopper. (B. 743, Brackin testimony,

p. 87, lines 2-9). The State Comptroller then requested that Plaintiff provide him with a

copy of her diploma. (B. 744, Brackin testimony, p. 90, lines 16-19). Plaintiff provided

a copy of her diploma, showing Trinity College & University, not Trinity University.

On April 12, 2006, Rachel Dickinson, Acting Division Director (Personnel

Manager) for the Alabama Department of Finance, sent a letter to State Personnel

Director Graham regarding the need to verify the diploma of Ms. Hopper, an Accountant

with the Department of Finance. (B. 867). The diploma provided by Ms. Hopper

purportedly reflected she had a Bachelor's degree from Trinity College & University. (B.

865).

Specifically, Ms. Dickinson stated in her letter that the Finance Department had

not been successful in verifying that Trinity College & University was an accredited

university and further expressed concern that Ms. Hopper had stated on her application

for employment as an Accountant that her degree was from Trinity University in Texas.

(B. 867). Ms. Dickinson further noted that "Trinity University had no records matching

the employee." (B. 867). Among other documents, Ms. Dickinson attached to her letter

a copy of what she described as the "diploma in question from Trinity College & University."  (B. 865).

Another application that had been submitted by Ms. Hopper on July 25, 2003, for the position of Accountant listed the name and location of the school she had attended as "Trinity University, 715 Stadium Dr., San Antonio, TX 78212."  (B. 811).  On a prior application signed by Ms. Hopper on May 28, 2003, for the position of Staff Accountant, she represented that her "dates of attendance" at "Trinity University San Antonio, TX" were "from 9/94 to 5/2002," that she had obtained 124 semester hours at Trinity University and that she had graduated from Trinity University with a B.S. degree in Business Administration.  (B. 471).  Moreover, Plaintiff attached an additional sheet to her application listing 22 courses which were "particularly related to the position" and included the course numbers.  (B. 743).  These courses included *inter alia,* Statistics, Business Law I and II, Finance, Organizational Behavior and Investments.

In response to the letter from Rachel Dickinson, Defendant Graham requested that two employees of the State Personnel Department, Darby Forrester and Stan Goolsby, review Ms. Hopper's educational background due to the "recent notification of discrepancies" associated with Ms. Hopper's "academic accomplishments."  (B. 564).  Ms. Forrester and Mr. Goolsby prepared a memorandum dated May 4, 2006 (B. 564-565) with attachments (B. 566-598).  In that memorandum, the State Personnel Department employees explained that information obtained during the investigation revealed that Trinity College & University was now referred to as Bronte International University,

7

which was based in the British Virgin Islands. (B. 565).    In addition, documentation from Trinity University in San Antonio, Texas confirmed that Trinity University had no records for Ms. Hopper, did not provide online or correspondence courses for students and was not affiliated with any other Trinity colleges or universities. (B. 598).    The information obtained by the State Personnel Department employees also provided that Bronte International University, previously known as Trinity College & University, awarded educational credit for past work experiences for a fee of $695 for a Bachelor's degree. (B. 596-597).    In the concluding paragraph of the memorandum, the State Personnel Department employees wrote: "Accordingly, it is determined that Ms. Hopper fraudulently represented her educational accomplishments that eventually led to her employment as an Accountant with the Department of Finance as well as her current employment with the Department of Human Resources."[1]    (B. 565).    Moreover, it was determined that the course numbers submitted by the Plaintiff corresponded to the course numbers for Trinity University in San Antonio, Texas, which, by her own admission, the Plaintiff never attended. (B. 564-565).

After receiving the memorandum dated May 4, 2006, Defendant Graham met with individuals with the Personnel and Legal Divisions of DHR. (B. 772, Graham testimony, p. 201, line 23; p. 202, lines 1-2).    At that meeting, Defendant Graham gave them a copy of the memorandum. (B. 772, Graham testimony, p. 202, lines 4-5).    Thomas King, the Director of DHR's Personnel Office, was present at the meeting. (King Affidavit, pp. 1-

---

[1] Plaintiff transferred to the Department of Human Resources on April 16, 2006.

2, ¶ 4).  Mr. King has testified through affidavit that he received the investigative report prepared by staff of the State Personnel Department but made no decision that day concerning Ms. Hopper's employment and had no agreement with Defendant Graham or anyone else about what should be done with the information.  (King Affidavit, pp. 1-2, ¶ 4).  Defendant Graham had no communications with DHR's Personnel Director, DHR's Assistant Personnel Director, or anyone else at DHR about the pre-termination hearing process or the termination appeal hearing process later provided to Ms. Hopper.  (Graham Affidavit, p. 3, lines 19-22).

Defendant Graham testified that she did not make or participate in the decision to terminate Ms. Hopper.  (B. 773, Graham testimony, p. 206, lines 9-10; Graham Affidavit, p. 1, lines 31-32).  Instead, it is undisputed that Commissioner Walley, as the appointing authority for DHR, made the decision to terminate Ms. Hopper from her position as a DHR accountant.  (B. 773, Graham testimony, p. 208, lines 5-17; Walley Affidavit, p. 5, ¶ 1).

Prior to Ms. Hopper's dismissal from DHR, Commissioner Walley wrote a letter to Ms. Hopper dated May 9, 2006, informing her that an administrative hearing had been scheduled, the purpose of which was to "hear charges and evidence concerning false information contained on your job application for Accountant."  (B. 81).  The letter also contained the following specific information regarding the charge against Ms. Hopper:

> It has been brought to my attention that you have violated *Rules of the State Personnel Board*, 670-X-19-.01(2)(f), Falsification of Records - Application for Employment.

> On your Application for Examination for Accountant, you indicated you received a B.S. degree in Business Administration from Trinity University, 715 Stadium Drive, San Antonio, Texas 78212, in May 2002. You further attached a list of courses you completed that were particularly related to the accounting position. Trinity University in San Antonio, Texas has stated they have been unable to locate records verifying that you were enrolled at that university. Furthermore, several of the course numbers listed in the attachment to you application did not correspond with the course numbers listed in Trinity's curriculum.

(B. 81). Ms. Hopper signed this letter at the bottom of page two indicating that she had received it. (B. 82). Thereafter, on June 12, 2006, Commissioner Walley provided to Ms. Hopper an amendment to the original charge letter of May 9, 2006. (B. 83-83). The amendment contains the following additional information: "Evidence indicates that you do not have a degree from an actual school or university but obtained the degree from a 'diploma mill' calling itself Trinity College & University, and that you did not attend any classes at this university." (B. 84). Ms. Hopper signed page two of this letter indicating that she received a copy of it. (B. 85).

In her Affidavit, Defendant Graham avers that she never communicated in any way with Commissioner Walley about the dismissal of Ms. Hopper. (Graham Affidavit, p. 4, lines 1-2). In addition, she did not assist in preparing the charge letters dated May 9, 2006, and June 12, 2006, to Ms. Hopper from Commissioner Walley. (Graham Affidavit, p. 2, lines 6-8), nor did she receive or review drafts or copies of those letters prior to the decision by DHR to terminate Ms. Hopper's employment. (Graham Affidavit, p. 2, lines 8-9).

A pre-termination hearing was held at DHR on June 22, 2006, before Hearing Officer Phillip Tyler. (B. 634-635). Defendant Graham did not appear at the pre-termination hearing, has never met Hearing Officer Phillip Tyler, and had no contact with him prior to, during or subsequent to Ms. Hopper's pre-termination hearing at DHR. (Graham Affidavit, p. 2, lines 3-5, 10-12). Ms. Hopper attended the hearing at DHR, provided testimony to the hearing officer, and was represented by counsel at the hearing, who presented evidence and examined and cross-examined witnesses. (B. 633-635).

The hearing officer, Phillip Tyler, presented a written recommendation to Commissioner Walley in which he concluded that, based upon the evidence presented at the hearing, Ms. Hopper knew she did not have a degree from Trinity University in San Antonio and further knew she did not have a valid college degree when she completed her application for the Accountant position. (B. 634-635). Defendant Graham did not participate in the preparation of Mr. Tyler's recommendation. (Graham Affidavit, p. 2, lines 13-14).

By letter dated August 14, 2006, Commissioner Walley terminated the employment of Ms. Hopper. (B. 632). Commissioner Walley did not base his decision to terminate Ms. Hopper's employment with DHR on the investigation of Ms. Hopper's degree conducted by the State Personnel Department. (Walley Affidavit, p. 4, ¶ 1). Instead, Commissioner Walley's decision to terminate Ms. Hopper's employment was based on the evidence presented at the pre-dismissal hearing at DHR. (Walley Affidavit, p. 4, ¶ 1).

Ms. Hopper then timely appealed the termination decision to the State Personnel Board. (B. 8). Defendant Graham assigned the case to be heard by L. Daniel Morris, Jr., who was then the Assistant Director of the Department of Transportation. (B. 94-95). (hereinafter "ALJ Morris"). The dismissal appeal hearing before ALJ Morris took place at the Office of the Department of Transportation. (Graham Affidavit, p. 2, lines 15-17). ALJ Morris was not and has never been an employee of the State Personnel Department. (Graham Affidavit, p. 2, lines 19-20). Defendant Graham had no communications with ALJ Morris about the evidence concerning the validity of Ms. Hopper's degree or other matters relating to her dismissal by DHR prior to or during the administrative hearing, other than when she testified at the hearing, nor did she have any communications with ALJ Morris about those matters prior to the issuance of ALJ Morris' Recommended Order to the SPB. (Graham Affidavit, p. 3, lines 4-7). Defendant Graham was not present during the termination appeal hearing before ALJ Morris other than to provide testimony when called as a witness by Ms. Hopper's attorney. (Graham Affidavit, p. 2, lines 17-18).

After hearing testimony of numerous witnesses on December 18, 2006 (B. 721-779), assessing their credibility and studying the exhibits offered by counsel for both parties, ALJ Morris prepared a written Recommended Order to the SPB recommending that Ms. Hopper's discharge from employment with DHR be upheld. (B. 124-132).

At the hearing, Ms. Hopper testified that the document she calls a degree was mailed to her by Trinity College & University, which she had found on the internet. (B.

754, Hopper testimony, p. 130, lines 20-23).  Ms. Hopper testified that approximately 6 months passed between the time she submitted information to Trinity College & University regarding three or four courses she had taken at Troy University, eight days' worth of seminars, three courses at a vocational school and her work history and the time she received a "diploma" from Trinity College & University.  (B. 756, Hopper testimony, p. 137, lines 3-11; B. 755, Hopper testimony, p. 135, lines 19-23, p. 136, line 1).   Ms. Hopper further testified that at no time did she take any online courses from Trinity College & University or from any college or university.  (B. 755, Hopper testimony, p. 136, lines 2-7).[2]

ALJ Morris found that Ms. Hopper had falsified information on her application for the Accountant position in violation of the Rules of the State Personnel Board.  (B. 130). He also found that her own testimony established she had not attended any college class to receive credit for seventeen courses she had listed on an attachment to her job application but instead had been given course credit by an entity called Trinity College & University located in the British Virgin Islands.  (B. 130).[3]  ALJ Morris further found that

---

[2]  In her deposition, Ms. Hopper testified that she never did any online course work to get credit for any of the courses reflected on her transcript from Trinity College & University, other than the 3 or 4 courses she had taken at Troy University.  (Hopper depo., p. 281, lines 16-23, p. 282, lines 1-7).  She further testified she never read a book or any other material to obtain credit for the courses.  (Hopper depo., p. 282, lines 8-11).  She also did not take any exam or test or prepare a paper, project or any other submission to obtain credit for the courses.  (Hopper depo., p. 282, lines 12-18).

[3]  In fact, the courses listed by Hopper contained course numbers offered by Trinity University, but were different than the "courses" awarded her by Trinity College and University by virtue of her "life experiences."  (B. 757, Hopper testimony, pp. 141-143, lines 18-23, 1-23, 1-11).

the evidence presented at the hearing clearly demonstrated that Ms. Hopper did not have a valid degree but instead had a piece of paper from a "diploma mill." (B. 131).

In his Recommended Order, ALJ Morris also pointed out that Ms. Hopper's attorney stated on the record that he had no objection to ALJ Morris as the hearing officer. (B. 127). ALJ Morris further noted that Ms. Hopper had not filed a timely motion for recusal in accordance with the ALJ's Scheduling Order. (B. 127).

> Mr. Debardelaben: I'm not objecting to you sir. [ALJ Morris]
>
> The Court: Are you objecting to me as the ALJ?
>
> Mr. DeBardelaben: I'm objecting to the way she – the procedure was put in. She—I'm not objecting to you. She violated the rights when she appointed – I had a choice to object to you as the ALJ, and I don't object to you as the ALJ. But I wasn't given the opportunity to object to Ms. Graham's use of the procedure. And the only way –
>
> The Court: I don't understand that, to be perfectly candid. You've had a month, two months, three months to object to the procedure, and I've seen nothing in writing on that at all.
>
> Mr. DeBardelaben: No, sir. I was told in writing that we could object to her appointment of the Judge. I have no objection to you as the ALJ.

(B. 723).

In response to the ALJ's recommended Order upholding termination, Ms. Hopper's counsel thereafter filed a request for oral argument before the SPB as well as written exceptions to the ALJ's Recommended Order. (B. 137-189). DHR filed a response to Ms. Hopper's written exceptions. (B. 193-310). After reviewing the written exceptions submitted by both parties and hearing oral arguments by counsel for both

parties on March 14, 2007, the SPB issued a written Order affirming the decision of DHR

to dismiss Ms. Hopper.  (B. 311-312).

Defendant Graham was not present during the oral arguments presented by

counsel to the SPB, nor was Graham present during the executive session of the SPB.

(Graham Affidavit, p. 3, lines 8-10;  SPB Board Meeting Minutes of March 14, 2007,

item IX).  Defendant Graham had no conversations with any members of the Board about

the evidence concerning the validity of Ms. Hopper's degree or any other matter

concerning Ms. Hopper prior to the issuance by the Board of its Order affirming the

dismissal.  (Graham Affidavit, p. 3, lines 15-18).  Defendant Graham did not sign the

Order of the SPB upholding Ms. Hopper's dismissal.  (Graham Affidavit, p. 3, line 11).

Although Defendant's Graham's name is typed on the Order as Secretary to the Board,

the Order was signed by the Deputy Personnel Director, Paul Thomas.   (Graham

Affidavit, p. 3, lines 12-13).  Defendant Graham was not present when the Order was

signed and was unaware of the decision of the SPB until after the Board meeting had

adjourned.  (Graham Affidavit, p. 3, lines 13-14).

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the *Federal Rules of Civil Procedure,* summary judgment is

appropriate if the pleadings, deposition testimony, affidavits and pertinent documents

establish there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law.  *See Celotex v. Cattrett*, 477 U.S. 317, 106 S.

Ct. 2548, 91 L. Ed. 2d 265 (1986).  Defendants respectfully submit that they have met

this burden by the evidence presented in support of their Motion for Summary Judgment showing there is no dispute as to any material fact as well as by showing the Plaintiff has failed to present evidence to support the elements of her case on which she bears the ultimate burden of proof. *Id.* at 322-23, 106 S. Ct. at 2552-53.

## SUMMARY JUDGMENT IS DUE TO BE GRANTED AS TO COUNT I – PETITION FOR REVIEW

In Count I of the Complaint, the Plaintiff is petitioning this Honorable Court to review the Order of the SPB upholding the decision by DHR to dismiss the Plaintiff from her position as an Accountant with DHR. Therefore, the standard of review to be applied to Count I is set forth in section 41-22-20(k) of the *Alabama Code* (1975) as follows:

> [T]he agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute.

Alabama courts have elaborated on the applicable standard of review of a State agency's decision. In *Health Care Authority of Huntsville v. State Health Planning Agency*, 549 So. 2d 973, 975 (Ala. Civ. App. 1989), the Alabama Court of Civil Appeals stated: "This [standard of review] holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result." Reviewing courts must recognize that a presumption of correctness exists for the final decision of a State agency because of the agency's recognized expertise in a specific, specialized area. *See Hamrick v. The Alabama Alcoholic Beverage Control Board*, 628 So. 2d 632 (Ala. Civ. App. 1993). In addition, "an agency's interpretation of

its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation." *Sylacauga Health Care Center, Inc. v. Alabama State Health Planning Agency*, 662 So. 2d 265, 268 (Ala. Civ. App. 1994).

Therefore, judicial review of administrative decisions is limited in scope and, ordinarily, courts will pass only on questions of whether the administrative agency has acted within its constitutional or statutory powers, whether its Order or determination is supported by substantial evidence, or whether its action is reasonable and not arbitrary. *See Parsons v. Board of Registration for Professional Engineers & Land Surveyors*, 451 So. 2d 296 (Ala. Civ. App. 1984). As defined by the Alabama Court of Civil Appeals in *Alabama Board of Nursing v. Williams,* 941 So. 2d 990, 999 (Ala. Civ. App. 2005), "substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." (citations omitted).

Section 41-22-20(k) of the *Alabama Code* only permits a court to reverse or modify a decision of an agency if the court finds that the agency action was in violation of standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner (the Employee in this case) have been prejudiced because the agency action is any one or more of the following:

(1)    In violation of constitutional or statutory provisions;

(2)    In excess of the statutory authority of the agency;

(3)    In violation of any pertinent agency rule;

(4)    Made upon unlawful procedure;

(5)    Affected by other error of law;

(6)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(7)    Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

As to issues of law, the standard of review in this matter is *de novo*.  To the extent, however, that the trial court's review of any legal issue is predicated on factual matters, section 41-22-20 of the *Alabama Code* requires a presumption that the Board's findings of fact are correct.  *See Smith v. State Department of Public Safety*, 716 So. 2d 693 (Ala. Civ. App. 1998).

Because a presumption of correctness is to be applied to the factual findings of the State Personnel Board's Order and substantial evidence exists to support those factual findings, summary judgment is due to be entered as to Count I which seeks a review by this Honorable Court of the Order of the SPB to uphold the decision by DHR to terminate Ms. Hopper's employment.

Defendants filed with this Court, a record of the proceedings.  A review of the record clearly indicates there was sufficient evidence to uphold her dismissal.  Plaintiff admitted she never attended classes, never took a test, or submitted any paperwork, in order to "earn this degree."  Further, Plaintiff went to great length to mislead by putting the name and address of a similar but different and reputable university on her application.  Plaintiff claimed she attended the reputable university (Trinity University)

from 1994 through 2002.    Finally, Plaintiff claimed to have taken courses that corresponded to course numbers offered by Trinity University.  These claimed courses were even different from those Plaintiff allegedly was given credit for by the diploma mill.  In sum, more than sufficient evidence exists to uphold Plaintiff's termination.

In regard to the other grounds by which a court can reverse or modify a decision of an agency under section 41-22-20(k) of the *Alabama Code*, the Plaintiff has presented no evidence to support her claim that her substantial rights have been prejudiced. Specifically, the Plaintiff has failed to set forth any bases whatsoever for her averments in Count I of the Complaint that the agency's action was in violation of constitutional or statutory provisions in excess of its statutory authority, in violation of any pertinent agency rule, made upon unlawful procedure, affected by other error of law or was unreasonable, arbitrary, or capricious or characterized by an abuse of discretion, or was clearly an unwarranted exercise of discretion.

### THE ALABAMA STATE PERSONNEL BOARD IS DUE TO BE DISMISSED AS A MATTER OF LAW BECAUSE IT IS ENTITLED TO ABSOLUTE ELEVENTH AMENDMENT IMMUNITY

The Plaintiff has sued the Alabama State Personnel Board.   Other than in connection with the Petition for Review in Count I of the Complaint, which was filed pursuant to the Alabama Administrative Procedure Act, § 41-22-1, *et seq.* of the *Alabama Code*, all claims are due to be dismissed against the SPB on the ground that it is a governmental entity.  *Ala. Code* § 36-26-1, *et seq.* (1975).  It is well-established that a governmental entity is entitled to Eleventh Amendment immunity for both damages and

injunctive relief. *See Cory v. White*, 457 U.S. 85, 90 (1982); *Miller v. King*, 384 F. 3d 1248, 1264 (11th Cir. 2004); *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F. 3d 273, 280-81 (5th Cir. 2002).

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state." The Eleventh Amendment further precludes lawsuits by citizens against their own state. *See Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890). It is well-settled that states and their agencies are immune from suits seeking monetary damages. *See Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 1355-56, 39 L. Ed. 2d 662 (1974). In *Alabama v. Pugh*, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978), the Supreme Court ruled that actions seeking injunctive relief against a state or its agencies were not an exception to the Eleventh Amendment bar. The Supreme Court has further explained that the Eleventh Amendment precludes a federal court from exercising jurisdiction over a lawsuit against a state, unless the state has consented to be sued or has waived its immunity, or where Congress has overridden the state's right to immunity. *See Pennhurst State SCH & Hosp. v. Halderman,* 465 U.S. 89, 98-100, 104 S. Ct. 900, 906-08, 79 L. Ed. 2d 67 (1984).

Therefore, based upon absolute Eleventh Amendment immunity, all claims against the Alabama State Personnel Board are due to be dismissed.

<u>**DEFENDANT GRAHAM  IS ENTITLED
TO ABSOLUTE IMMUNITY FROM
DAMAGES  AND RETROSPECTIVE INJUNCTIVE
RELIEF IN HER OFFICIAL CAPACITY**</u>

Jackie Graham has been sued in her official capacity as Director of the Alabama State Personnel Department.   It is undisputed that claims for damages against an official of a State agency in his official capacity are claims against the State agency itself.  *See Lassiter v. Alabama A & M Univ.*, 3 F. 3d 1482, 1485 (11th Cir. 1993); *Carr v. City of Florence, Ala.*, 916 F. 2d 1521, 1525 (11th Cir. 1990); *Morgan v. State of Ala.*, 5 F. Supp. 2d at 1296.  Absent abrogation or waiver, the Eleventh Amendment bars federal claims for damages against the states, including suits brought by a state's own citizens.  U.S. Const. Amend. XI;   *see, e.g., Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993);  *Welch v. Texas Department of Highways and Public Transportation*, 483 U.S. 468, 107 S. Ct. 2941, 97 L. Ed. 2d 389 (1987).  The Supreme Court has specifically held a 42 U.S.C. § 1983 claim against state governments to be barred by the Eleventh Amendment.  *Quern v. Jordan*, 440 U.S. 332, 340, 99 S. Ct. 1139, 1144, 59 L. Ed. 2d 358 (1979) ("There can be no doubt, however, that such [Section 1983] suit against the State [of Alabama] and its Board of Corrections is barred by the Eleventh Amendment . . . .") (quoting *Alabama v. Pugh*, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed  2d 1114 (1978)). Congress has not abrogated Eleventh Amendment immunity in 42 U.S.C. § 1983 lawsuits, thus all claims for damages against Jackie Graham in her official capacity are due to be dismissed.

21

Additionally, all claims for injunctive relief, other than that which is prospective in nature, are due to be dismissed.  As aptly described by the Eleventh Circuit in *Florida Association of Rehabilitative Facilities v. State of Florida Department of Health and Rehabilitative Services*, 225 F. 3d. 1208, 122 (11th Cir. 2000):

> Under the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), there is a long and well-recognized exception to this rule for suits against state officers seeking prospective equitable relief to end continuing violations of federal law. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336-37 (11th Cir. 1999) (citing *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269, 117 S.Ct. 2028, 2034, 138 L.Ed. 2d 438 (1997) ("We do not ... question the continuing validity of the *Ex parte Young* doctrine.")), cert. denied, 529 U.S. 1012, 120 S.Ct. 1287, 146 L.Ed. 2d 233 (2000). The availability of this doctrine turns, in the first place, on whether the plaintiff seeks retrospective or prospective relief. *Ex parte Young* has been applied in cases where a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past. Thus, *Ex parte Young* applies to cases in which the relief against the state official directly ends the violation of federal law, as opposed to cases in which relief is intended indirectly to encourage compliance with federal law through deterrence or simply to compensate the victim. 'Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.' *Summit Med. Assocs.*, 180 F.3d at 1337 (quoting *Papasan v. Allain*, 478 U.S. 265, 277-78, 106 S.Ct. 2932, 2940, 92 L.Ed. 2d 209 (1986)). Therefore, the Eleventh Amendment does not generally prohibit suits against state officials in federal court seeking only prospective injunctive or declaratory relief, but bars suits seeking retrospective relief such as restitution or damages. *See Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed. 2d 371 (1985); *Sandoval v. Hagan*, 197 F.3d 484, 492 (11th Cir.1999) ("[I]ndividual suits that seek prospective relief for

ongoing violations of federal law ... may be levied against state officials."). If the prospective relief sought is "measured in terms of a monetary loss resulting from a past breach of a legal duty," it is the functional equivalent of money damages and *Ex parte Young* does not apply. *Edelman,* 415 U.S. at 669, 94 S. Ct. at 1347.

Thus, all claims for damages and retrospective relief are barred against Defendant Graham in her official capacity.

## <u>JACKIE GRAHAM IS ENTITLED TO QUALIFIED IMMUNITY</u>

In the Complaint, Jackie Graham is named as a defendant in her individual capacity. As such, she is entitled to qualified immunity. This Court is doubtless familiar with the doctrine of qualified immunity. Nevertheless, for the ease of discussion, a general overview of qualified immunity jurisprudence follows. Courts afford government officials qualified immunity to shield them from liability when they are performing functions within the scope of their duties so long as their conduct does not violate a clearly established statutory or constitutional right of the complaining party. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Under the Supreme Court's holdings in *Harlow* and *Anderson v. Creighton*, 483 U.S. 635 (1987), a defendant is entitled to claim the affirmative defense of qualified immunity unless his or her actions violated clearly established law. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate law." *Malley v. Briggs*, 475 U.S. 335 (1986). *See also, Edwards v. Gilbert*, 867 F.2d 1271, 1273 (11th Cir. 1989).

The defense of qualified immunity embodies an "objective reasonableness" standard, giving a government agent the benefit of the doubt unless his actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them. *GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1366 (11th Cir. 1998). Qualified immunity thus represents the rule, rather than the exception: "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *GJR Investments, Inc. v. County of Escambia, Florida, quoting Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). "To be eligible for qualified immunity, the official must first establish that he was performing a 'discretionary function' at the time the alleged violation of federal law occurred. Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

In Counts II and III of the Complaint, the Plaintiff contends that Defendant Graham, acting under color and authority of state law, violated Plaintiff's rights to due process and equal protection by preventing the Plaintiff from receiving a full and fair hearing and by "tainting" the Personnel Hearing and Personnel Board appeal of the Plaintiff.

All acts alleged by the Plaintiff on the part of Defendant Graham were performed as a part of her job duties and responsibilities as State Personnel Director. Therefore, Defendant Graham was performing discretionary functions at the time the Plaintiff contends her due process and equal protection rights were violated.

Thus, the burden then shifts to the Plaintiff to show that "(1) the Defendant has violated a constitutional right and (2) that this constitutional right was 'clearly established' at the time she did it." *Crosby v. Monroe County*, 394 F. 3d 1328, 1332 (11th Cir. 2004). In *Saucier v. Katz*, 531 U.S. 991, 121 S. Ct. 1251 (2001), the Supreme Court stated that "[i]n a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence." *Id.* at 2155. According to the Supreme Court, qualified immunity is "an immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 2156. The Court has further advised that "if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

In the present case, the evidence is undisputed that Defendant Graham took no action whatsoever that interfered with Ms. Hopper's right to due process and equal protection under state and federal law. Ms. Hopper appears to claim that her right to due process was violated by Defendant Graham because Defendant Graham did not meet with her prior to the time Defendant Graham met with individuals from DHR's Personnel

Division to provide them with the memorandum regarding the results of the investigation of the validity of Ms. Hopper's purported "degree" from Trinity College & University. The due process clause does not require such notification. Moreover, it is undisputed that Defendant Graham was not Ms. Hopper's appointing authority and did not make or participate in the decision to terminate the employment of Ms. Hopper as an Accountant with DHR. (Graham Affidavit, p. 1, lines 31-32, p. 2, lines 1-2). The substantial evidence in this case establishes that the pre-termination process provided to Ms. Hopper prior to her dismissal was much more than sufficient. Ms. Hopper was provided with two charge letters which specifically provided notice to her regarding the charges against her. (B. 81-82). The letters were written by DHR Commissioner Walley who never communicated with Defendant Graham about any matters concerning Ms. Hopper. (Graham Affidavit, p. 4, lines 1-2). Defendant Graham did not appear at the pre-termination hearing scheduled by DHR, has never met or had any conversations with the DHR hearing officer and did not participate in the preparation of the hearing officer's recommendation to DHR's Commissioner. (Graham Affidavit, p. 2, lines 3-5, 10-14). Ms. Hopper was represented by counsel throughout the DHR hearing who presented evidence and examined witnesses, including Ms. Hopper. (B. 633-635). Additionally, even assuming that Hopper did not receive due process in her pre-termination hearing, such error, if any, is cured by an adequate post-deprivation hearing.

    The Plaintiff also appears to contend that Defendant Graham "tainted" the termination appeal hearing by appointing the ALJ. However, it is undisputed that, other

than serving as a witness when called by the Plaintiff,  Defendant Graham had no communications with ALJ Morris about the evidence concerning the validity of Ms. Hopper's degree or any other matters relating to her dismissal by DHR prior to or during the hearing nor did she have any communications with ALJ Morris about those matters prior to the issuance of ALJ Morris' Recommended Order to the SPB.  (Graham Affidavit, p. 3, lines 4-7).  Defendant Graham was not present during the termination appeal hearing before ALJ Morris other than to provide testimony when called as a witness by Ms. Hopper's attorney.  (Graham Affidavit, p. 2, lines 17-18).  In his Recommended Order, ALJ Morris also pointed out that Ms. Hopper's attorney stated on the record that he had no objection to ALJ Morris as the hearing officer.  (B. 127).  In *Burke v. Alabama Board of Nursing*, 871 F. Supp. 1437 (M.D. Ala. 1994), the federal district court noted:

> Courts have held, however, that it is the plaintiff's burden in a situation such as this to show actual bias on the part of the hearing officer. *Burney v. Polk Comm. College,* 728 F.2d 1374, 1378 n. 11 (11th Cir.1984); *Evers v. Brd. of Med. Examiners,* 516 So.2d 650, 654 (Ala.Civ.App.1987), *appeal dismissed* 486 U.S. 1001, 108 S.Ct. 1723, 100 L.Ed.2d 188 (1988). Absent a showing of bias, the officer is presumed to be impartial. *Schweiker v. McLure,* 456 U.S. 188, 195, 102 S.Ct. 1665, 1669, 72 L.Ed.2d 1 (1982), *Johnson,* 734 F.2d at 783,*Black v. City of Auburn,* 857 F.Supp. 1540, 1547 (M.D.Ala.1994).

Plaintiff has presented no evidence of actual bias on the part of ALJ Morris and has presented no evidence that Defendant Graham in any way influenced or even attempted to influence the decisions of the DHR hearing officer, the ALJ, the Board

members or Commissioner Walley.   In fact, as previously stated, Commissioner Walley, who made the decision to terminate Ms. Hopper, has provided sworn testimony that he did not base his decision to terminate Ms. Hopper's employment on the investigation of her degree by the State Personnel Department (Walley Affidavit, p. 4, ¶ 2) and that he has never had any communication whatsoever with Defendant Graham about Ms. Hopper, the evidence concerning Ms. Hopper's degree or any other matter involving Ms. Hopper, either before or after the pre-termination hearing conducted by DHR.  (Walley Affidavit, p. 3, ¶ 1).  The Plaintiff also contends that Defendant Graham signed the SPB Order affirming DHR's termination of Ms. Hopper.   This contention is incorrect. Defendant Graham did not sign the Order.  (Graham Affidavit, p. 3, line 11).  Instead, the Order was signed by the Deputy Personnel Director, Paul Thomas.  (Graham Affidavit, p. 3, lines 12-13).  Defendant Graham was not present when the Order was signed and was unaware of the SPB's decision until after the Board had adjourned.  (Graham Affidavit, p. 3, lines 13-14).

Therefore, because the Plaintiff has failed to present any evidence that the law was clearly established that Defendant Graham's actions violated clearly established law, she is entitled to qualified immunity.

### JOE N. DICKSON, JOHN M. McMILLAN, JOYCE P. O'NEAL, ELLEN G. McNAIR AND JAMES H. ANDERSON ARE ENTITLED TO ABSOLUTE QUASI-JUDICIAL IMMUNITY

Absolute quasi-judicial immunity derives from absolute judicial immunity. *Turney v. O'Toole*, 898 F.2d 1470, 1474 (10th Cir.1990). Judges are absolutely immune from

civil liability under section 1983 for acts performed in their judicial capacity, provided such acts are not done in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S. Ct. 1099, 1105, 55 L. Ed. 2d 331 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 13 Wall. 335, 351, 20 L. Ed. 646 (1872)); see *Pierson v. Ray*, 386 U.S. 547, 553-54, 87 S. Ct. 1213, 1217-18, 18 L. Ed. 2d 288 (1967). Nonjudicial officials are encompassed by a judge's absolute immunity when their official duties "have an integral relationship with the judicial process." *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir.1980). Like judges, these officials must be acting within the scope of their authority. *See Property Management & Invs., Inc. v. Lewis*, 752 F.2d 599, 603 (11th Cir.1985) (corporate receiver protected by judicial immunity in executing orders of appointing judge because complaint did not allege that he acted outside his authority). Thus, we determine the absolute quasi-judicial immunity of a nonjudicial official through a functional analysis of the action taken by the official in relation to the judicial process. *See Antoine*, 508  U.S. at 443, 113 S. Ct. at 2171; *Burns v. Reed,* 500 U.S. 478, 111 S. Ct. 1934, 1939, 114 L. Ed. 2d 547 (1991); *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538, 544, 98 L. Ed. 2d 555 (1988); *Ashbrook*, 617 F.2d at 476; *see also Schopler*, 903 F.2d at 1380 (officials performing judicial functions traditionally are afforded absolute immunity). *Roland v. Phillips*, 19 F.3d 552 (11th Cir. 1994).

Quasi-judicial immunity is recognized in a variety of contexts. *See, e.g.*, *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385 (9th Cir. 1987), *cert. denied and appeal dismissed*, 486 U.S. 1040,108 S. Ct. 2031, 100 L. Ed. 2d 616 (1988) (absolute immunity

for clerks when they perform tasks that are an integral part of the judicial process); *Demoran v. Witt*, 781 F.2d 155 (9th Cir. 1985) (absolute immunity for judicial officers); *Boston v. LaFayette County,* 744 F. Supp. 746 (N.D. Miss. 1990), *aff'd,* 933 F.2d 1003 (5th Cir. 1991) (quasi-judicial immunity for lower officials who implement judicial orders); *Marley v.* Wright, 137 F.R.D. 359 (W.D. Okla. 1991), *aff'd*, 968 F.2d 20 (10th Cir. 1992) (absolute immunity); *Formanek v. Arment*, 737 F. Supp. 72 (E.D. Mo. 1990) (clerks and court reporters absolutely immune from damages for acts done under court order or at judge's direction).

In their roles as members of the Alabama State Personnel Board, the defendants are clothed with quasi-judicial immunity from the plaintiff's claims. The Supreme Court has held that this judicial immunity may protect certain executive and administrative personnel whose duties are "classically adjudicatory." *Cleavinger v. Saxner*, 474 U.S. 193, 199, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (citing *Pierson v. Ray*, 386 U.S. 547, 553-54, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967)). As all of the claims against the State Personnel Board members arose out of their adjudicatory acts, they are entitled to quasi-judicial immunity. *See Butz v. Economou*, 438 U.S. 478, 512-14 (1978) (holding agency hearing examiners entitled to judicial immunity because their role was "functionally comparable" to that of judge); *Atiya v. Salt Lake County*, 988 F.2d 1013 (10th Cir.1993). State parole board members are entitled to absolute quasi-judicial immunity from a suit for money damages against the defendants individually. *Clark v. State of Georgia Pardons & Paroles Board*, 915 F.2d 636, 640 n. 1 (11th Cir.1990);

*Fuller v. Georgia State Board of Pardons & Paroles*, 851 F.2d 1307 (11th Cir.1988).

Clearly, the members of the State Personnel Board, who perform quasi-judicial functions in the termination appeal hearings, are due to be dismissed based upon quasi-judicial immunity.

## ADDITIONAL GROUNDS TO SUPPORT DEFENDANTS' ENTITLEMENT TO SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS IN COUNT II

In Count II, the Plaintiff contends that the denial of her Motion to Compel by the ALJ to require the State Personnel Department to produce documents relating to any and all investigations concerning any person accused of providing false information on a job application or not having a degree from an accepted or certified college or university denied Plaintiff the right to a full and fair hearing, and her right to due process and equal protection under the law as guaranteed by the Alabama and United States Constitutions. The Plaintiff did not specify which Defendants allegedly engaged in this conduct, but merely stated that she has been damaged "because of the wrongful acts of the defendants . . . ." (Complaint ¶¶ 36 and 37).   However, only the ALJ has the authority to grant or deny a motion in an administrative hearing.  The ALJ is not a defendant in this case.

As previously discussed, summary judgment is due to be granted as to all defendants based upon absolute, qualified and quasi-judicial immunity.  Even if the Eleventh Amendment immunity did not apply to bar these claims against the Defendants, the State Personnel Department was not a party to the hearing before the ALJ.  As a non-party to the proceeding, the State Personnel Department objected to the production of the

requested documents on the grounds that the request was too broad in scope and time and was overly burdensome; that Ms. Hopper had failed to demonstrate that the persons who were the subject of the documents were similarly situated in any way to Ms. Hopper; and that the files could not possibly be relevant to the proceeding because the subject of the appeal was DHR's decision to terminate the employment of Ms. Hopper.  (B. 384).  The SPD was not the appointing authority and did not make the dismissal decision.  (Walley Affidavit, p. 5, ¶ 1).  Therefore, the SPD's documents with respect to other persons were irrelevant to the termination appeal and irrelevant to Ms. Hopper's claim she was denied due process and equal protection by these Defendants.  (B. 384).

Additionally, it should be pointed out that the proceeding in question was an administrative proceeding.  There is no constitutional right to prehearing discovery in administrative proceedings.  *Delevan v. Board of Dental Examiners of Alabama,*  620 So. 2d 13 (Ala. 1992).  Such a matter is within the discretion of the Board, subject to judicial review.  *Ex parte Civil Service Board,* 571 So. 2d 1125 (Ala. 1990).  See also, *Chafian v. Alabama Board of Chiropractic Examiners*, 647 So. 2d 759, 762 (Ala. Civ. App. 1994) (Chiropractor was not entitled to depose complaining witness in an administrative proceeding).

Even assuming that this proceeding was not an administrative proceeding, a trial judge is afforded great discretion regarding discovery and will not be reversed absent a showing of abuse of discretion and substantial harm to the appellant.  *Wolff v. Colonial Bank*, 612 So. 2d 1146 (Ala. 1992).  This Count is due to be dismissed.

32

## SUMMARY JUDGMENT IS DUE TO BE GRANTED AS TO COUNT III ALLEGING DUE PROCESS AND EQUAL PROTECTION VIOLATIONS

In Count III, Plaintiff alleges a violation of the due process and equal protection clauses.   Plaintiff claims that Graham should have contacted her prior to providing the results of an investigation to the Department of Human Resources.  Plaintiff also claims that the ALJ's, the State Personnel Director, and the State Personnel Board should have been recused from Hopper's termination appeal.  The failure to recuse, and the failure to notify the Plaintiff, according to the Plaintiff,  constitutes a violation of due process and the equal protection clause.

## Due Process

Defendants are unaware of any due process requirement that an individual must be notified that an investigation is occurring, nor is there any due process right to participant in an investigation.  Plaintiff can point to no authority which holds otherwise.  Plaintiff does have the right, however, under the due process clause, to know the charges against her and an opportunity to respond prior to any deprivation of a property interest.  This, Plaintiff had an abundance.

Ms. Hopper's pre-termination hearing more than satisfied her due process rights. She attended and testified at the DHR hearing and was represented by counsel at the hearing, who presented evidence and examined witnesses.  (B. 633-635).  It is undisputed that Ms. Hopper had an ample opportunity to present her side of the matter before any decision was made by the DHR hearing officer regarding her dismissal.  (B. 633-635).

The same is true regarding the hearing before the ALJ upon appeal by Ms. Hopper of the decision by DHR's Commissioner to terminate her employment.   Ms. Hopper was represented by counsel who questioned witnesses and presented closing argument to the ALJ.  (B. 721-779).  After receiving the Recommended Order of the ALJ, Ms. Hopper was permitted to submit written exceptions to the ALJ's Recommended Order as well as present oral argument, through her counsel, to all five members of the SPB.  (B. 137-189).

In her deposition, Ms. Hopper agreed that she had two hearings, both of which provided her with an opportunity to testify and present evidence and her attorney had a further opportunity to argue her case before the SPB.  (Hopper depo., p. 289, lines 13-23, p. 290, lines 1-10).

> Q:    You had an opportunity to explain your side of the story to the DHR hearing officer; is that correct?
>
> A:    I know I had a hearing.
>
> Q:    And did you have an opportunity to testify at that hearing?
>
> A:    Yes.
>
> Q:    Was anything preventing you from testifying the way you wanted to testify at that hearing?
>
> A:    No.
>
> Q:    And you had a hearing in front of Mr. Dan Morris who was the hearing officer for the State Personnel Board; is that accurate?
>
> A:    Yes.

Q:    And you had an opportunity to testify and present
      evidence at that hearing?

A:    Yes.

Q:    And finally, your attorney had an opportunity to argue
      your case before the full state board; is that correct?

A:    Yes.

(Hopper depo., p. 289, lines 13-23, p. 290, lines 1-10).

Obviously Plaintiff was given the right to review the charges against her, testify, cross-examine witnesses and present evidence and have her hearing heard before an impartial body. Due process requires nothing more.

Plaintiff also claims that the Personnel Board and the Director of the Personnel Board should have recused themselves as the Personnel Board and its employees were directly involved in this matter. "It appears that it will be impossible for the employee to have a fair and equal hearing due to the significant involvement of the State Personnel Board employees from the beginning of her case." (Exhibit 11 to Plaintiff's complaint).

Even if a timely objection had been filed, no recusal was necessary. In *Evers v. Bd. of Medical Examiners,* 516 So. 2d 650, 654 (Ala. Civ. App. 1987), a doctor facing misconduct charges alleged a due process violation by the Board of Medical Examiners. The Board had investigated complaints against Evers and had filed charges with the State Medical Licensure Commission. The Board's general counsel served as the legal advisor to the Board and as a prosecutor in a license revocation hearing before the Commission. The Board's assistant general counsel served as the hearing officer for the Commission as

well as the legal advisor to that body. Despite these intimate connections, the court found no due process violation. *Id.* at 653. Additionally, contact with a board by the hearing officer during deliberations by that board has also been held not to be a violation of due process absent a showing that the officer attempted to influence the board's deliberations improperly. *Delavan,* 620 So. 2d 13,17 (Ala.Civ. App. 1992).

Moreover, the Eleventh Circuit allowed a board to appoint their regular attorney to serve as a hearing officer in a proceeding concerning the dismissal of a teacher. *Holley v. Seminole County School District,* 755 F.2d 1492 (11th Cir. 1985). According to the court, because the plaintiff "has not shown any actual bias" on the part of [the attorney], we hold that the fact that [the attorney] sat as hearing examiner does not violate due process. *Holley,* 755 F.2d at 1497. In fact, the Eleventh Circuit has upheld a state administrative body's choice of one of its own members to serve as hearing officer absent proof of actual bias. *Burney,* 728 F.2d 1374 (11th Cir. 1994). In *Burney,* a state college board of trustees appointed one of its members to serve as a hearing officer in a proceeding that dealt with the dismissal of a tenured guidance counselor. After the hearing, the officer issued a proposed order that supported the president's recommendation prompting a due process challenge by the counselor. The court ruled that plaintiff's due process challenge could not succeed where plaintiff could point to no evidence of actual bias. *Burney,* 728 F.2d at 1378 n. 11.

Additionally, the former Fifth Circuit held that, in order to support a disqualification, "[t]he record must support actual partiality of the body or its individual

members. In the absence of evidence to the contrary, we must assume therefore that [the hearing officer] acted independently." *Megill v. Board of Ed. of the State of Fla.,* 541 F.2d 1073, 1079 (5th Cir. 1976) (internal quotation marks and citations omitted).

In this case, Graham's affidavit establishes that she appointed a hearing officer outside of the State Personnel Department, she did not speak with the appointed ALJ about the case, did not speak with the State Personnel Board about the case, was not present during the oral arguments before the SPB, was not present during executive session, and did not sign the SPB's order upholding the dismissal. (Graham Affidavit, p. 2, lines 19-20, p. 3, lines 1-14).

Though Plaintiff charges that the State Personnel Board should have been recused, she can point to no justification for such an action. There is no evidence, or even allegation, that the SPB had any prior knowledge of the case, or that they were biased in any fashion. In short, Plaintiff was not deprived of either due process or equal protection. In fact, Plaintiff received both a pre-termination hearing, as well as a post-termination hearing – clearly more than the due process clause requires.

## **Equal Protection**

Plaintiff, a white female, also contends her equal protection rights were violated. The Fourteenth Amendment to the United States Constitution provides, in pertinent part: "No State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. "This provision creates no substantive rights," and instead "embodies a general rule that States

must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill,* 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997). "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (citing *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920)). In this regard, it "'is essentially a direction that all persons similarly situated should be treated alike.'" *Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Auth.,* 825 F.2d 367, 369 (11th Cir. 1987) (quoting *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)); *see also Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (explaining that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents") (internal quotation marks omitted); *Campbell v. Rainbow City, Ala.,* 434 F.3d 1306, 1313 (11th Cir. 2006). Thus, "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." *E & T Realty v. Strickland,* 830 F.2d 1107, 1109 (11th Cir. 1987); *Campbell,* 434 F.3d at 1314.    In this case, Plaintiff alleges an equal protection violation, but points to no person who is similarly situated, who was treated differently.   Plaintiff does not point to a male, or a black who obtained a piece of paper purporting to be a four year college degree by paying $695.00 and then using that

piece of paper to falsely obtain a state job.  Plaintiff's equal protection claim is completely devoid of merit.  This Count is due to be dismissed.

## SUMMARY JUDGMENT IS DUE TO BE GRANTED AS TO COUNT IV ALLEGING CONSPIRACY

In paragraph 48 of her Complaint, Ms. Hopper alleges a conspiracy existed between Defendant Graham, Defendant Walley, "and various and sundry others including but not limited to the Personnel Director and Assistant Personnel Director" at DHR.  She contends those individuals conspired to deny her a fair and unbiased hearing and deny her due process and equal protection of the laws as guaranteed by the Alabama and United States Constitutions.

Based upon the undisputed testimony through the Affidavits of Defendant Graham and Defendant Walley as well as the testimony of Ms. Hopper, no evidence exists to support a conspiracy claim in this case.

Specifically, in her Affidavit, Defendant Graham testified that she did not make or participate in the decision to terminate the employment of Ms. Hopper as an Accountant with DHR.  (Graham Affidavit, p. 1, lines 31-32).  She did not appear at Ms. Hopper's pre-termination hearing before DHR's hearing officer, Phillip Tyler.  (Graham Affidavit, p. 2, lines 10-12).  She has never met Phillip Tyler and had no contact with him prior to, during or subsequent to Ms. Hopper's termination hearing at DHR.  (Graham Affidavit, p. 2, lines 4-5).  She did not participate in the preparation of the May 9, 2006, and June 12, 2006, charge letters by Commissioner Walley to Ms. Hopper setting forth the charges against her and notifying her of a pre-termination hearing date.  (Graham Affidavit, p. 2,

lines 6-8).  Defendant Graham was not provided with drafts or copies of those letters prior to Ms. Hopper's termination.  (Graham Affidavit, p. 2, lines 8-9).

Defendant Graham did not participate in the preparation of Phillip Tyler's recommendation to Commissioner Walley to terminate the employment of Ms. Hopper. (Graham Affidavit, p. 2, lines 13-14).  Defendant Graham did not communicate with the Personnel Director of DHR, Assistant Personnel Director of DHR or anyone else at DHR about the pre-termination hearing process or the termination appeal hearing process prior to or during the times those hearings took place.  (Graham Affidavit, p. 3, lines 19-22).

It is undisputed that Defendant Graham and Defendant Walley never had any communication about any matter concerning Ms. Hopper.  (Graham Affidavit, p. 4, lines 1-2;  Walley Affidavit, p. 3, ¶ 1).

In her deposition, Ms. Hopper testified that she is not aware of any conversations Commissioner Walley had with anyone involved in this case (Hopper depo., p. 133, lines 12-23) and is not aware of any communications between Commissioner Walley and Jackie Graham about this case.  (Hopper depo., p. 134, lines 22-23, p. 135, lines 1-2). When asked in her deposition to name the "various and sundry others" who participated in what she contends to be a conspiracy to harm her, Ms. Hopper stated "I don't know the answer to that."  (Hopper depo., p. 216, lines 20-23, p. 217, line 1.)  When asked if she could name any other people she is claiming took part in the alleged conspiracy, Ms. Hopper stated "No."  (Hopper depo., p. 218, line 23, p. 219, lines 1-2).

Although the Plaintiff does not contend in Count IV that she is claiming a conspiracy based upon 42 U.S.C. § 1985 (3), even assuming she is attempting to base a cause of action upon that section, she clearly has not met the elements of that cause of action. Specifically, based upon the above undisputed evidence submitted through affidavits and the testimony of Ms. Hopper herself, she has failed to present substantial evidence of: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in her person or his property or deprived of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). More specifically, the second element requires a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id*. at 829, 103 S.Ct. at 3356 (quoting *Griffin [v. Breckenridge]*, 403 U.S. [88] at 102, 91 S.Ct. [1790] at 1798 [29 L.Ed.2d 338] ); *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627-28 (11th Cir. 1992) (footnote omitted). In explaining that qualified immunity is not available to individuals under 42 U.S.C. § 1985, the Eleventh Circuit, in *Burrell v. Bd. of Trustees of Ga. Military College*, 970 F.2d 785 (11th Cir. 1992) noted that the "discriminatory intent" requirement of 1985 erects a significant hurdle for plaintiffs. The Eleventh Circuit held that this additional safeguard obviates the need for granting public officials qualified immunity in section 1985(3)

actions. *Burrell*, at 794. *See, e.g., Scott*, 463 U.S. at 835-39, 103 S.Ct. at 3359-61 (plaintiffs failed to identify requisite class-based animus); *Lucero*, 954 F.2d at 627-29 (same); *Mississippi Women's Medical Clinic v. McMillan*, 866 F.2d 788, 794 (5th Cir. 1989) (same).

Ms. Hopper has failed to present evidence of any of those requisite elements, much less all four of the elements, because the undisputed evidence establishes that the individuals she named in paragraph 48 of her Complaint had no communications whatsoever about the hearing process provided to Ms. Hopper, both pre-termination and post-termination. In fact, it is undisputed that Defendant Graham and Defendant Walley never had <u>any</u> communications whatsoever regarding Ms. Hopper. (Graham Affidavit, p. 4, lines 1-2; Walley Affidavit, p. 3, ¶ 1). The plaintiff in this case fails miserably in her attempt to plead, much less prove, a 1985 conspiracy claim and this claim is due to be dismissed.

WHEREFORE, Defendant Graham respectfully submits that she is entitled to summary judgment on the conspiracy claim asserted against her in Count IV of the Plaintiff's Complaint.

## <u>CONCLUSION</u>

Based upon the undisputed sworn testimony, the documentary evidence and the well-settled law applicable to the claims presented by the Plaintiff in this cause, Defendants respectfully submit they are entitled to judgment in their favor as a matter of law as to all Counts set forth in Plaintiff's Complaint against them.

Respectfully submitted,

s/ Joana S. Ellis
JOANA S. ELLIS            (ELL014)
ALICE ANN BYRNE           (BYR015)
Attorneys for Defendants Graham, The
Personnel Board of the State of
Alabama, Dickson, McMillan, O'Neal,
McNair, and Anderson

OF COUNSEL:

Alabama State Personnel Department
Legal Division
64 North Union Street
Folsom Administrative Bldg., Suite 316
Montgomery, Alabama 36130
Telephone:    (334) 353-0046
Facsimile:    (334) 353-4481
Email: joana.ellis@personnel.alabama.gov

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document on the following by First Class U.S. mail, postage prepaid and properly addressed on this the 30th day of May 2008:

Joel C. Marsh, Esq.
Alabama Department of Human Resources
Post Office Box 30400
Montgomery, Alabama 36130
Email: joel.marsh@dhr.alabama.gov

Jim L. DeBardelaben, Esq.
Attorney at Law
Post Office Box 152
Montgomery, Alabama 36101-0152
Email:       jimdebard@aol.com

s/ Joana S. Ellis
OF COUNSEL